IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVE TORELLO, as Trustee of the Central States Joint Board of Health and Welfare Fund and CHEMICAL & PRODUCTION WORKERS UNION LOCAL 30, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16 C 2435 |
| v. | ) ) | Judge Robert W. Gettleman |
| NAPLETON'S AUTO WERKS, INC., | ) ) | |
| Defendant. | ) ) | |
| NAPLETON'S AUTO WERKS, INC., | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| MY BENEFITS GROUP, INC., and Rod Maynor, individually, | ) ) ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Steve Torello, as Trustee of the Central States Joint Board Health and Welfare Fund (the "Fund") and the Chemical & Production Workers Union Local 30 (the "Union") sued Napleton's Auto Werks, Inc., alleging a breach of Collective Bargaining Agreement ("CBA") with the Union and a Participation Agreement with the Fund, seeking collection of union dues, initiation dues, and contributions to the Fund for the period November 1, 2012, through October 1, 2014 (the "Audit Period"). Napleton's then brought a third-party complaint against My Benefits Group, Inc. ("MBG") and its owner Rod Maynor, claiming that if Napleton's owed plaintiff, then MBG and/or Maynor owed it the same amount because Napleton's would not have entered into the

union contracts absent MBG's and Maynor's fraud and misrepresentations. Specifically, Napleton's third-party complaint alleges: (1) negligent misrepresentation against MBG (Count I); (2) fraud against MBG and Maynor (Count II); and (3) breach of fiduciary duty against MBG (Count III). MBG and Maynor have now moved for summary judgment on all three counts. For the reasons described below, the motion is granted.

## BACKGROUND

Sometime in 2012 Napleton's became interested in procuring health insurance for its employees. In September 20, 2012, Michael Jopes of Napleton's met with Maynor in Jopes' office. Jopes claims that Maynor indicated the MBG was an insurance broker, or that it "at least provided services similar to an insurance broker," meaning that MBG would put Napleton's together with an insurance company and negotiate the rates. Maynor denies ever telling Jopes that MBG was an insurance broker, and describes MBG as "a company that was established to talk with employers on their benefits that they have in their company today and if at all there was any way to improve their benefits we went over that and talked about their benefits." Also at the September 2012 meeting was Patrick Keenan, an insurance broker that Napleton's used for its health insurance needs.

MBG had a contract with Local 30 that "allowed MBG to speak with employers about whether joining the Union would increase benefits for their employees." In essence, MBG recruited companies to join the local.

As a result of the September 2012 meeting, Napleton's entered into a Recognition Agreement and Addendum, effective November 1, 2012, through October 31, 2013, in which it affirmed its intent to voluntarily recognize the Union as the exclusive bargaining agent of its

non-supervisory employees, and agreed to become a signatory to the CBA. On November 1, 2013, Napleton's executed an additional Recognition Agreement and Addendum, effective November 1, 2013 through October 31, 2014, again affirming its intent to recognize the Union.

In addition to the Union agreements, Napleton's entered into Participation Agreements with the Fund, obligating it to pay contributions to the Fund for covered employees "so long as the Employer is a party to a [CBA] with a local union affiliated with the [Fund] . . .."

In a December 26, 2017 Memorandum Opinion this court granted summary judgment for plaintiffs and against Napleton's, and on February 7, 2017, the court entered judgment in favor of plaintiff and against Napleton's in the amount of $464,205.14.

## DISCUSSION

MBG and Maynor have moved for summary judgment on all counts. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, Becker v. Tenebaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services - Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment is inappropriate when "the

3

evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Counts I and II**

In Counts I and II Napleton's alleges that MBG and Maynor are guilty of negligent misrepresentation and fraud. Specifically, it claims that Maynor and MBG assured Jopes that: (1) any employee that desired health insurance through [the Fund] would be required to sign a "check-off card" indicating that they wished to join the Local; (2) only those employees who signed the "check-off cards" would be provided health insurance through the Fund; and (3) neither the Fund nor Local 30 would enforce any term of any CBA, Addendum to a CBA, Recognition Agreement, or Participation Agreement other than requiring payment of a portion of the insurance premiums for employees who desired insurance coverage through the Fund.

Under Illinois law, which the parties agree applies to the instant dispute, to prevail on a claim for negligent misrepresentation, a plaintiff must establish: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party as a result of its reliance; and (6) a duty on the part of the defendant to communicate accurate information. Tricontinental Indus. v. PricewaterhouseCoopers, LLP, 475 F.3d 834, 833-34 (7th Cir. 2007).

To prevail on a claim for fraud, a party must establish: (1) a false statement of material facts; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance on the truth of the statement; and (5) damages resulting from reliance on the statement. Id. at 841.

4

Reliance on a defendant's negligent misrepresentation must be reasonable. <u>Rovell v. American National Bank</u>, 194 F.3d 867, 870 (7th Cir. 1999). Similarly, on a claim for fraud, reliance must also be reasonable. <u>Quinn v. McGraw-Hill Cos.</u>, 168 F.3d 331, 335 (7th Cir. 1999). The reasonable reliance requirement is the same under both claims. <u>Id</u>.

"Illinois courts have long recognized that a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth . . . he cannot be heard to say he was deceived by misrepresentations." <u>Faust Printing, Inc. v. MAN Corp.</u>, 2007 WL 4442325, *3 (N.D. Ill. Sept. 14, 2007) (and cases cited therein). "Illinois courts have consistently refused to extend the doctrine of fraudulent inducement to vitiate contracts where the complaining party could have discovered the fraud by reading the instrument and had opportunity to do so; this is the so-called 'due diligence' rule." <u>Id</u>.

In the instant case, Jopes knew that for employees to be excluded from the bargaining unit, they must be shown as an exclusion on the Addendum and Recognition Agreements. Indeed, Napelton's claim is that MBG and Maynor told Jopes that they could accomplish his goal by simply adding a provision to the addendum excluding anyone who did not sign a check-off card. Yet, Napleton's signed two Recognition Agreements, Addenda Agreements and Participation Agreements that contained no such provisions. The Recognition Agreements it did sign contained exclusions for mechanics and "1099 sales people," but contained no provision to exclude employees who did not sign a check-off card. Despite this obvious lack of what it deemed to be the most important provision, Napleton's never inquired of MBG, the Union/Local,

its own insurance broker, or its own legal counsel.1   Instead, it simply signed the Agreements, first in 2012, and then again in 2013, apparently without ever reading them.   The contracts it signed explicitly contradicted the so-called "promises" MBG is alleged to have made.   Under such circumstances, no trier of fact could conclude that Napleton's reliance on such promises (if they were indeed made) was reasonable.   Consequently, the court grants MBG and Maynor's motion for summary judgment on Counts I and II.

**Count III**

In Count III, Napleton's alleges that MBG acted as its insurance broker and as such owed Napleton's a fiduciary duty to inform it of all material facts, and breached that duty by making the alleged false statements.

This claim is specifically barred by Illinois law.   735 ILCS 5/2-2201(b) provides that:

> No cause of action brought by any person or entity against any insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer, registered firm, or limited insurance representative to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer, registered firm, or limited insurance representative of any money that was received as premiums, as a premium deposit, or as a payment of a claim.

Insurance brokers are included as insurance producers under this statute.   Mercola v. Abdou, 223 F.Supp.3d 720, 728 (N.D. Ill. 2016).   Section 5/2-2201(b) immunizes insurance brokers from claims based on alleged breach of fiduciary duty.   AYH Holdings, Inc. v. Avreco,

---

1 Napleton's argument that MBG "thwarted" its efforts to investigate the veracity of the misrepresentations is nonsensical.   It claims to have asked MBG for a copy of the master agreement referenced in the addenda, that MBG first refused and then showed Napleton's an unrelated union contract.   Napleton's also claims that MBG refused to provide contact information for Local 30.   If true, however, this should have put Napleton's on notice that further investigation was necessary and that it should not sign the agreements.   Instead, it signed the agreements without attempting to ensure that they contained the necessary exclusions.

Inc., 357 Ill.App.3d 17, 43 (1st Dist. 2005). The section narrowly defines the scope of a breach of fiduciary duty claim, limiting such claims to "conduct . . . involving the wrongful retention or misappropriation . . . of any money that was received as premiums, as a premium deposit, or as payment of a claim." M.G. Skinner & Assoc. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc., 845 F.3d 313, 321 (7th Cir. 2017).

In the instant case, there is no evidence that MBG or Maynor received any money from Napleton's (or anyone else) for procuring the insurance. Nor is Napleton's suing for the wrongful retention of any premium. Consequently, Napleton's breach of fiduciary duty claim is barred by section 5/2201(b).

## CONCLUSION

For the reasons described above, third-party defendants' motion for summary judgment (Doc. 95) is granted.

**ENTER:    March 6, 2018**

Robert W. Gettleman
United States District Judge